**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | : <br> : <br> : |
|  | : **Civil Action No.** |
| Plaintiff, | : |
| v. | : <br> : |
| PETER SCALISE III and THE3RDBEVCO INC., | : <br> : <br> : |
| Defendants. | : <br> : <br> : |

## <u>COMPLAINT</u>

1.      Between 2019 and 2024, Defendants Peter Scalise III ("Scalise") and The3rdBevco Inc. ("The3rdBevco" or the "Company"), a beverage company that Scalise founded, controls, and operates, perpetrated a $3.6 million offering fraud.

2.      Defendants misled investors about the use of the investor funds and a potential collaboration with "Individual 1," a celebrity described by Defendants as a "Global Superstar and Music Icon."

3.      Contrary to what investors were told, Scalise misappropriated and misused more than $856,000 of investor funds, including for personal expenses, such as tuition, mortgage payments, and landscaping.

4.      In addition, in communications to existing investors and potential investors, Defendants promoted a potential collaboration with Individual 1 on a supposed rum alcohol product, using Individual 1's nickname and trademark in its product brand name and using Individual 1's name, image, trademark, and music in various promotional materials—all without authorization.  While Defendants communicated with Individual 1's brother about an

1

arrangement in which he would agree to attempt to facilitate a meeting between Defendants and Individual 1's management team, there was never any deal, negotiation, discussion or any other contact between the Defendants and Individual 1 or Individual 1's management team.

5.      Moreover, Defendants also offered and sold unregistered securities without a valid exemption from registration.

6.      By engaging in the conduct described in this Complaint, Defendants violated, directly or indirectly, and unless enjoined will continue to violate, Sections 5(a), 5(c), and 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 77e(a), 77e(c), and 77q(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

7.      The Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C.§§ 78u(d), 78u(e), and 78aa].

8.      Venue is proper in this district pursuant to Section 22(a) of the Securities Act [15 U.S.C.§§ 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa] because certain of the transactions, acts, practices and courses of conduct constituting violations of the federal securities laws occurred within this district.  By means of the conduct alleged in this Complaint, Defendants defrauded at least one victim who resided, and continues to reside, in this district to whom Defendants offered and sold securities.

9.      In connection with the conduct described in this Complaint, Defendants directly or indirectly made use of the means or instrumentalities of interstate commerce, of the mails, or of the facilities of a national securities exchange.

**DEFENDANTS**

10.    **Peter Scalise III**, age 56, resides in Suffolk County, New York.  He founded, operates, and controls The3rdBevco.  He is the Company's largest shareholder, and simultaneously serves as its Chief Executive Officer, President, Principal Accounting and Financial Officer, and sole member of the Board of Directors.

11.    **The3rdBevco Inc**. is a New York-based corporation and a penny stock issuer.  In October 2019, the Company was incorporated as LAID Beverages, Inc.  In January 2020, the Company was re-named The3rdBevco Inc.  For the majority of the time that The3rdBevco has been in business, Scalise was the Company's lone employee.  The3rdBevco does not have any securities registered under the Exchange Act.

**FACTS**

12.    In 2019, Scalise formed The3rdBevco.  Since its inception, Scalise controlled all aspects of The3rdBevco, including its offering of securities, the information disclosed in the solicitation of investors, and how it used investor funds.

13.    Scalise initially promoted The3rdBevco as a company that would make beverages formulated with ingredients that offer health benefits beyond nutritional value and hydration.

14.    Scalise later added alcoholic beverages to the products that The3rdBevco was supposedly developing.

15.    However, in the nearly five years following its formation, The3rdBevco sold little or no product and generated minimal, if any, revenue.

16.    Defendants relied heavily on investor funds for The3rdBevco to remain in business.

## I.  Scalise Misappropriated and Misused Investors Funds.

17.  In soliciting investments, including in offering documents and e-mails, Defendants told investors and potential investors that their funds would be used primarily to develop and operate the Company's beverage business.

18.  Defendants disclosed, via public filings, that Scalise was entitled to certain compensation for his work at the Company.  However, from 2019 to 2024, Scalise took far more investor funds than he and the Company disclosed or to which he was entitled.

19.  Defendants failed to use investor funds as promised.

20.  For example, Scalise misappropriated investor funds through direct transfers to his or a family member's personal bank account, payments made directly from the Company accounts on his behalf to benefit himself or his family, and cash withdrawals.

21.  Scalise misappropriated these funds to pay personal expenses, such as tuition, mortgage payments, car payments, and landscaping.

22.  Defendants knew, or were reckless in not knowing, that they had not used investor funds as promised and that Scalise had misappropriated funds for himself and his family.

23.  In total, Scalise misappropriated and misused more than $856,000 in investor funds.

## II.  Defendants Misled Investors About A Potential Collaboration With Individual 1 And Business Ties To Individual 1's Brother.

### A.  Defendants Approached Individual 1's Brother And Touted A Potential Partnership With Individual 1.

24.  Over the course of many months, The3rdBevco made numerous misrepresentations to existing investors and prospective investors by overstating the Company's potential to collaborate with Individual 1 on a purported new rum brand using Individual 1's nickname and trademark in that brand's name ("Rum Brand").

25.     In July 2022, The3rdBevco announced in an e-mail to investors that the Company engaged in preliminary discussions with Individual 1's management team for a collaboration on a new Rum Brand.

26.     However, no such discussions happened then or ever.  And the Rum Brand was never produced or sold to consumers.

27.     In July 2022, The3rdBevco approached Individual 1's brother, who was not a part of Individual 1's management team, to propose that he become a consultant for the Company.

28.     On August 15, 2022, The3rdBevco and Individual 1's brother executed a letter of intent, which provided, in part, that, after the parties executed a formal agreement and Individual 1's brother received his initial compensation, Individual 1's brother would attempt to facilitate a meeting between The3rdBevco and Individual 1's management team.

29.     Over the ensuing months, The3rdBevco continued to tout a connection with Individual 1.

30.     For example, in an August 29, 2022 e-mail to investors, The3rdBevco provided electronic links for investors to review a The3rdBevco slide presentation (the "August 2022 Presentation") and a "commercial" for the purported Rum Brand.

31.     The August 2022 Presentation, which Scalise provided to a contractor to include in an e-mail to investors, stated that The3rdBevco "partner[s] with Grammy winners and Global Super Stars," referenced Individual 1 as part of its marketing strategy, and included next to the title of "Celebrity Brands Strategic Consultant" a photograph of Individual 1 and Individual 1's brother together.

32.     The "commercial" did not explicitly reference Individual 1 by name, but it included bottles bearing Individual 1's nickname and trademark and used a popular song featuring Individual 1's vocals as background music without authorization.

33.     Similarly, in a September 12, 2022 e-mail, The3rdBevco provided investors with an electronic link to an updated version of the "commercial," which included bottles bearing Individual 1's nickname and trademark and used a different popular song with Individual 1's vocals as background music without authorization.

34.     On September 16, 2022, via a newswire service, The3rdBevco issued a press release announcing the executed letter of intent with Individual 1's brother.  Scalise reviewed and edited the press release and authorized its release to the newswire service.

35.     The press release emphasized the relationship between Individual 1 and Individual 1's brother, used Individual 1's name, image, and trademark without authorization, and stated that there was the potential for The3rdBevco to develop the Rum Brand with Individual 1.

36.     The press release also promoted The3rdBevco's securities offering pursuant to Regulation A [17 C.F.R. § 230.251, *et seq.*].

37.     On the same day, The3rdBevco sent investors an e-mail with a link to the press release.

38.     Additionally, in a September 20, 2022 e-mail, The3rdBevco told investors that it had a productive meeting with Individual 1's brother and that a meeting with Individual 1's team to discuss deal terms was being scheduled for the third week of October.

39.     In the August 29 and September 12 e-mails to investors, The3rdBevco included an electronic link to a website where investors could purchase shares of the Company's stock; and, in the September 20 e-mail, the Company suggested that investors add to their investment.

40.     Defendants knew, or were reckless in not knowing, that these materials and communications with investors were false and misleading.

41.     Contrary to the representations in the August 2022 Presentation, The3rdBevco did not partner with Grammy winners or global superstars.

42.     Moreover, the references to and images of Individual 1 in the August 2022 Presentation and the unauthorized use of Individual 1's vocals and trademark in the commercials falsely suggested that Individual 1 was collaborating with The3rdBevco and gave the misimpression that the Rum Brand was an actual product.  Neither was true.

43.     Contrary to the representation about a supposed scheduled meeting with Individual 1's team in October 2022, there was no contact between The3rdBevco and Individual 1's management team to schedule a meeting, and no such meeting ever occurred.

**B.  Individual 1's Brother Complained About Defendants' Use of Individual 1's Image.**

44.     On October 10, 2022, Individual 1's brother complained via e-mail to Scalise that Defendants should not have used Individual 1's image without authorization or publicized a non-existent collaboration regarding the purported Rum Brand in any press release.

45.     Scalise replied by e-mail the same day that he understood.

46.     Scalise also agreed that nothing would be said about the potential to collaborate with Individual 1 on the Rum Brand unless a deal was firmly in place.

47. However, a little over two weeks later, on October 28, 2022, The3rdBevco's website still displayed an image of Individual 1 with a rum bottle bearing Individual 1's nickname and trademark.

48. That same day, Individual 1's brother complained by phone to Scalise about Individual 1's image on the The3rdBevco's website. Later that day, Scalise confirmed by text message to Individual 1's brother that the image had been removed.

C. **The3rdBevco Never Executed A Formal Agreement With Individual 1's Brother.**

49. Although The3rdBevco and Individual 1's brother signed the letter of intent, they never finalized a formal agreement, and Individual 1's brother never worked as a consultant for The3rdBevco.

50. In early November 2022, Individual 1's brother signed the formal agreement contemplated by the letter of intent. However, The3rdBevco never signed the formal agreement.

51. Instead, shortly after Individual 1's brother signed the agreement, Scalise did not countersign, and took the extra step of electronically marking the agreement void.

52. Had The3rdBevco signed the agreement, the Company would have owed Individual 1's brother a signing payment of $125,000, which was more than the Company had in its account around that time.

53. When Individual 1's brother followed up by text message in early and mid-November 2022, Scalise provided several excuses for not having signed the agreement.

54. A few weeks later, in December 2022, Scalise asked Individual 1's brother via e-mail to pitch directly to Individual 1 the development of the Rum Brand in collaboration with The3rdBevco.

55.     Approximately two weeks later, in a reply e-mail, Individual 1's brother declined to do so and reiterated that, if The3rdBevco had executed a formal agreement with him, his role would have been to facilitate meetings, not pitch ideas.  However, because the agreement was never signed, he did not even work to facilitate a meeting.

D.  **Defendants Continued To Mislead Investors And Potential Investors About A Potential Collaboration With Individual 1.**

56.     Even after Scalise declined to execute and voided the formal agreement with Individual 1's brother, Scalise and The3rdBevco represented by e-mail to others, including an investment firm and a broker-dealer, that Individual 1's brother was part of The3rdBevco's team. Defendants knew, or were reckless in not knowing, that these representations were false.

57.     For instance, on March 23, 2023, Scalise requested that a new member of The3rdBevco's advisory committee reach out to his contacts to solicit investments in The3rdBevco.

58.     Scalise sent the committee member a template for an e-mail, which stated that Individual 1's brother is part of the The3rdBevco's team.  The template described Individual 1 as a "[m]ega star."  The template further indicated that the sender should attach to any e-mails a presentation similar to the August 2022 Presentation that was circulated to investors.

59.     On April 6, 2023, Scalise sent an existing investor and a potential investor a presentation focusing on the Rum Brand ("April 2023 Presentation") via e-mail.

60.     The April 2023 Presentation contained an unauthorized quote attributed to Individual 1, along with a fake signature of Individual 1's name, and images of Individual 1.

61.     The April 2023 Presentation described the nonexistent Rum Brand as though it was actually in development and used the name from one of Individual 1's popular songs as part of the messaging with an image of Individual 1 as the background.

9

62.     The April 2023 Presentation also referenced Individual 1's non-profit organization, stated that there was an opportunity available with Individual 1, and identified that opportunity as the Rum Brand.

63.     The April 2023 Presentation also listed Scalise and his contact information underneath a reference to Individual 1 and the purported Rum Brand.

64.     After that e-mail, the existing investor purchased $100,000 worth of shares of The3rdBevco stock.

65.     Defendants knew, or were reckless in not knowing, that their statements regarding a potential collaboration with Individual 1 were false and misleading.

66.     Defendants never spoke with Individual 1 or anyone on Individual 1's management team about collaborating on the purported Rum Brand.  Defendants never communicated with Individual 1 or anyone on Individual 1's management team at all.

67.     Defendants never at any time had authorization to use Individual 1's name, nickname, image, music, or trademark.

**III.     The3rdBevco Repeatedly Failed to Comply With Reg A's Reporting Requirements.**

68.     Pursuant to certain requirements, Reg A provides a means for companies to sell securities to the public without registration.

69.     On February 25, 2022, the Securities and Exchange Commission's Division of Corporation Finance qualified a Form 1-A POS filed by The3rdBevco for a securities offering through which the Company planned to raise $50 million.

70.     The3rdBevco started sales of Reg A shares immediately thereafter.

71.     From 2022 through May 2024, the Company conducted a general solicitation on its website, through its social media accounts, and through e-mails.

72.     Potential investors were directed to click a link to a third-party portal that processed their investments.  All of the sales of Reg A shares were processed through two online portals.

73.     Reg A requires issuers to file an annual report within 120 calendar days after the end of the fiscal year covered by the report and a semi-annual report within 90 calendar days after the end of the semi-annual period covered by the report.  If companies fail to file these reports as required, they may not rely on the Reg A exemption from the registration requirements and may not sell securities during the period of noncompliance unless another exemption from registration applies.

74.     The3rdBevco did not file either of those reports by their respective deadlines. Instead, the Company filed both of these reports on November 1, 2022, approximately five months and five weeks late, respectively.  On November 14, 2022, The3rdBevco filed a Form 1-Z terminating that Reg A offering and then, on November 17, 2022, The3rdBevco filed a Form 1-A for a new offering.  The new Reg A offering was qualified on February 8, 2023.

75.     As a result, The3rdBevco did not have an offering qualified pursuant to Reg A during the period May 1, 2022 through February 7, 2023.

76.     Nevertheless, during that period of delinquency, The3rdBevco sold more than 545,000 shares pursuant to Reg A, raising more than $564,000.  No other exemptions from registration applied to these securities sales.

77.     Defendants sold and offered for sale these securities using the means and instrumentalities of interstate commerce, such as the internet, social media, text messages, and e-mail.

78.     The3rdBevco also failed to timely file the required annual and semi-annual reports in 2023.

79.     During the period May 1, 2023 through September 15, 2023, while not in compliance with Reg A, the The3rdBevco impermissibly sold more than $53,000 in securities purportedly exempt from the registration requirements pursuant to Reg A.  No other exemption from registration applied during this period.

80.     Defendants sold and offered for sale these securities using the means and instrumentalities of interstate commerce, such as the internet, social media, text messages, and e-mail.

81.     Because no valid exemption from registration applied during these periods, The3rdBevco's sales of securities during these periods were improper.

**IV.     Defendants Violated The Federal Securities Laws.**

82.     During the relevant period, Defendants defrauded investors and potential investors in The3rdBevco.

83.     Defendants engaged in deceptive conduct including, but not limited to, using Individual 1's name, image, nickname, music, and trademark in materials provided to investors without Individual 1's knowledge, authorization, or consent.

84.     Defendants obtained money or property by means of false statements to investors, including money that Scalise misappropriated from investors.

85.     All of the misrepresentations and omissions set forth herein, individually and in the aggregate, are material.

86.     Defendants acted knowingly and/or recklessly.  Among other things, Scalise and The3rdBevco knew, or were reckless in not knowing, that they were engaging in deceptive

conduct and making materially false and misleading statements in connection with selling or offering of securities. Scalise also knew, or was reckless in not knowing, that he misappropriated funds.

87.     Scalise and The3rdBevco made false statements of material fact and omitted to state material facts necessary to make statements made not misleading.

88.     Scalise and The3rdBevco had ultimate authority for false and misleading statements made to existing investors and prospective investors in the materials and other written communications to existing investors and prospective investors.

89.     Defendants employed a device, scheme or artifice to defraud and engaged in acts, transactions or courses of business that operated as a fraud or deceit upon investors.

90.     In perpetrating the fraud, Defendants used the means or instruments of interstate commerce or of the mails, or the facility of a national securities exchange, including by sending numerous documents containing false statements via e-mail.

91.     The conduct described herein was in connection with the purchase or sale of securities.

92.     Defendants sold and offered to sell securities without a valid registration as to those securities or a valid exemption from registration.

93.     Defendants used the means or instruments of interstate commerce or the mails, including e-mails, to sell, and offer for sale, the unregistered securities.

## CLAIMS FOR RELIEF

### FIRST CLAIM
### Violations of Section 17(a) of the Securities Act
### (All Defendants)

94.     The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 93, inclusive, as if they were fully set forth herein.

95.     By engaging in the conduct alleged herein, Defendants Scalise and The3rdBevco knowingly or recklessly or, with respect to subparts b and c below, at least negligently, in the offer or sale of securities, directly or indirectly, singly or in concert, by the use of the means or instruments of transportation or communication in interstate commerce, or the means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange:

        a.     employed devices, schemes or artifices to defraud;

        b.     obtained money or property by means of untrue statements of material fact, or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

        c.     engaged in acts, transactions, practices, or courses of business that operated as a fraud or deceit upon offerees, purchasers, and prospective purchasers of securities.

96.     By engaging in the foregoing conduct, Defendants violated, and unless restrained and enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### SECOND CLAIM
### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder
### (All Defendants)

97.     The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 96, inclusive, as if they were fully set forth herein.

98.     By engaging in the conduct alleged herein, Defendants Scalise and The3rdBevco directly or indirectly, by use of the means or instruments of interstate commerce or of the mails,

14

or the facility of a national securities exchange, in connection with the purchase and sale of securities described herein, knowingly or recklessly:

      a.      employed devices, schemes, or artifices to defraud;

      b.      made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and

      c.      engaged in acts, practices, and courses of business which operated or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

99.      By reason of the foregoing, Defendants, directly and indirectly, violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### THIRD CLAIM
**Violations of Sections 5(a) and 5(c) of the Securities Act**
**(All Defendants)**

100.      The SEC realleges and incorporates by reference each and every allegation in paragraphs 1 through 99, inclusive, as if they were fully set forth herein.

101.      As a result of the conduct alleged herein, Defendants Scalise and The3rdBevco directly or indirectly made use of the instruments of transportation or communication in interstate commerce or of the mails, to offer to sell or to sell securities, or to carry or cause such securities to be carried through the mails or in interstate commerce for the purpose of sale or delivery after sale.

102.      No valid registration statement has been filed with the Commission or was in effect with respect to the improper offering or sale alleged herein.

103.      There was no exemption applicable for the improper offer and sale of the securities from the registration requirements of the Securities Act.

104.    By engaging in the foregoing conduct, Defendants violated, and unless restrained and enjoined, will continue to violate, Sections 5(a) and 5(c) of the Securities Act [15 U.S.C. §§ 77e(a) and 77e(c)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that this Court enter a final judgment:

### I.

Permanently restraining and enjoining Defendants from, directly or indirectly, violating Sections 5(a), 5(c), and 17(a) of the Securities Act [15 U.S.C. §§ 77e(a), e(c), and q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

### II.

Permanently restraining and enjoining Defendant Scalise from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account.

### III.

Ordering Defendants to disgorge all ill-gotten gains with prejudgment interest, to effect the remedial purposes of the federal securities laws.

### IV.

Ordering Defendant Scalise to pay civil penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

**V.**

Ordering that Defendant Scalise is barred from serving as an officer or director of any company that has a class of securities registered under Exchange Act Section 12 [15 U.S.C. § 78l] or that is required to file reports under Exchange Act Section 15(d) [15 U.S.C. § 78o(d)], pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

**VI.**

Ordering that Defendant Scalise is barred from participating in any offering of penny stock pursuant to Section 20(g) of the Securities Act [15 U.S.C. § 77t(g)] and Section 21(d)(6) of the Exchange Act [15 U.S.C.§ 78u(d)(6)].

**VII**.

Granting such other and further relief as this Court may determine to be just and necessary.

**JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands that this case be tried to a jury.

Respectfully submitted,

By:  s/ Gregory Bockin

Gregory Bockin, Esq.
John V. Donnelly III, Esq.
Julia C. Green, Esq.
Samika N. Osbourne, Esq.
Polly Hayes, Esq.
Securities and Exchange Commission
Philadelphia Regional Office
1617 JFK Blvd., Suite 520
Philadelphia, PA 19103
Telephone: (215) 597-3100
Facsimile: (215) 597-2740
E-mail:  BockinG@sec.gov

**ATTORNEYS FOR PLAINTIFF
SECURITIES AND EXCHANGE
COMMISSION**

Dated:  June 17, 2025

18